Chamberlain *v*. Bussey.

CHAMBERLAIN *vs*. BUSSEY.

The deed of *July* 20, 1799, from the Commonwealth of Massachusetts to *Henry Knox*, for himself " and all others interested in the *Waldo* patent," is, at law, a conveyance to Gen. *Knox* alone, from the uncertainty respecting the other persons intended.

The Ten Proprietors have no legal interest in the lands granted *July* 20, 1799, to *Henry Knox* for himself and all others interested in the *Waldo* patent.

The proprietors of land, organized as a corporation under the statute, may have their respective proportions set off by process of partition, after discharging all legal liens existing thereon in favor of the corporation; but against all other persons, their rights can be enforced only by an action in the name of the proprietors as a corporation.

THIS was a writ of entry, in which the demandant claimed an undivided moiety of one tenth part of all the lands in *Bangor*, *Hampden*, *Newburg* and *Hermon*, except one hundred acres reserved for each settler, by certain resolves, and 3900 acres in *Hermon*, claimed by *R. G. Amory*. It was tried before *Weston J.* upon the issue of *nul disseisin*.

The demandant claimed under the patent granted to *Beauchamp* and *Leverett*; whose title having descended to *John Leverett*, he parcelled the patent into ten shares in common, and granted them, in 1719, to certain persons, thenceforth called the Ten Proprietors. These proprietors conveyed two thirds of their land, in twenty shares, to *Brenton*, *Waldo*, and others, who were called the Twenty Associates; and afterwards conveyed to *Waldo* 100,000 acres, retaining the like quantity themselves. Of these Ten Proprietors, *William Hunt*, father of the demandant, was one; who conveyed his share to *John Pitts* and others, by deed of *Feb.* 21, 1787, and to *John Jackson*, by deed of *May* 4, 1787; both which titles the demandant acquired by purchase.

It appeared that, in 1772, a survey was made by one *Chadwick*; and *May* 31, 1773, an indenture was executed by the Ten Pro-

Chamberlain *v.* Bussey.

prietors on the one part, and by *Francis Waldo*, and others, representing the *Waldo* interest, on the other part; by which the latter released to the Ten Proprietors the tract surveyed by *Chadwick*; and the Ten Proprietors released to the other party, all their interest in the residue of the patent. The lands so surveyed and released to the Ten Proprietors, began at the mouth of *Marsh* river, at the southeast corner of *Frankfort*, and ran westwardly, in the southerly line of said town, and upon the same line extended further westward, nine miles and a quarter; thence north, twenty degrees east, fifteen miles; thence east, twelve degrees south, eleven miles and a half; thence south, one mile and a quarter, to *Penobscot* river; thence down the river, to the beginning; and it contained 90,100 acres.

The General Court of Massachusetts, by a resolve passed *July* 4, 1785, proposed to " confirm to the heirs of the late Brigadier *Waldo*, others, interested in the grant to *Beauchamp* and *Leverett*, a tract of land equal to a tract thirty miles square;" and directed a survey to be made, " beginning at the point of land east of the mouth of the river *Muscongus*, thence extending up said river, according to the course thereof, and thence round by the sea shore, and up the west bank of *Penobscot* river, so far that a line, stretched across westwardly from the *Penobscot* to the north end of the first mentioned line, would embrace a territory equal to a tract thirty miles square."

The *Waldo* patent was accordingly surveyed, and the north, or head line was established on what is now the divisional line between the towns of *Frankfort* and *Hampden*, as delineated on *Greenleaf's* map of Maine; thus severing into two parts the tract surveyed by *Chadwick*, and released to the Ten Proprietors, leaving only about 42,000 acres of it within the limits of the *Waldo* patent.

A large portion of the *Waldo* patent, as thus located, adjoining the *Muscongus* river, was found to be within the limits of the *Plymouth* patent, which was an elder and better title. To indemnify the grantees for the land thus lost, the General Court, by its resolves of *Feb.* 17 and 23, 1798, caused to be surveyed and granted " to *Henry Knox*, and others, interested in the *Waldo* patent," all the lands remaining the property of the Commonwealth in four town-

Chamberlain *v.* Bussey. '

ships lying north of the *Waldo* patent, being the present towns of *Hampden*, *Bangor*, *Hermon* and *Newburg*, excepting 100 acres to each settler. A deed of confirmation of these lands was also executed *July* 20, 1799, assigning them to *Knox* and " all others interested in the *Waldo* patent." The lands thus granted amounted to about 48,000 acres.

The demandant founded his claim on the language of the resolves and deed of the Commonwealth, contending that by the terms, " others interested," were intended the Ten Proprietors, who had lost their lands by the *Waldo* line, and who had an equitable interest in whatever related to that patent.

The tenant derived his title by deed from *Henry Knox* and wife, dated *March* 4, 1805, and recorded in 1806; and relied on the grant and deed from the Commonwealth to *Knox*, who, as he contended, was the sole grantee.

He also proved, that on the third day of *October* 1785, the Ten Proprietors, under one of whom the demandant claims, were an organized corporation, managing their part of the lands then held by them, as a body corporate; and that their share had before that time been released to them, by the other tenants in common of the *Waldo* patent, to hold in severalty by metes and bounds. At a meeting of the Ten Proprietors, holden *Nov.* 1, 1785, they voted that the bond presented by the heirs of Brigadier *Waldo*, for making good all lands that the proprietors might be deprived of, by surveying the patent according to the directions of the General Court, should be accepted; and that *William Hunt*, their clerk, be authorized and empowered, in their name and behalf, to make and execute a release and quitclaim to the Commonwealth of Massachusetts, of all their right to any lands contained in the grant to *Beauchamp* and *Leverett*, excepting what was contained within the bounds mentioned in the report of a committee of the General Court, appointed by a resolve of *Oct.* 28, 1783. The lands demanded were not within these bounds. Such a deed was accordingly made, *Nov.* 1, 1785.

Upon this evidence the counsel for the tenant contended, that the Ten Proprietors having released all their right in these lands,

Chamberlain *v.* Bussey.

before *Hunt* conveyed his particular share to *Pitts* and others, in 1787, nothing passed by this conveyance; and that as no grantee, except *Knox*, was specially named in the grant from the Commonwealth, the whole estate passed to him alone, by that grant.

The demandant offered to prove that nearly all the title of the Ten Proprietors had passed into the hands of Gen. *Knox*, in his lifetime, whose interests were adverse to his own; and that therefore he could not institute an action in their name, for his own benefit; and he contended that the proprietary, as to the four townships, was extinct, having done no act respecting them since they were granted by the Commonwealth, and all conveyances of lands in those townships having been made by Gen. *Knox*, and afterwards by the tenant, in their private capacities, as sole owners of the estate. This proof was rejected.

The Judge was of opinion that whatever might be the merits of the demandant's claim, he could not maintain this action in his own name; but that the title of the Ten Proprietors, if they had any, to any part of the four townships, should be established by an action in their name; and a verdict was taken for the tenant, subject to the opinion of the court upon the demandant's right to recover in this action.

*Williamson*, for the demandant, contended that the objection to his right to sue alone, should have been taken in abatement; and that in all actions, except those on contract, the want of other parties was cured by pleading over. *Ken. Propr's. v. Call* 1. *Mass.* 485.

The statutes creating tenants in common *quasi* corporations, are only enabling statutes, neither taking away, nor abridging any of their common law rights. They may sue in their corporate character, for an injury to the common property; or each one may, at his election, pursue his separate remedy at common law. *Monumoi beach v. Rogers* 1. *Mass.* 163. They may have partition among themselves; *Mitchell v. Starbuck* 10. *Mass.* 5;—and the seisin of one is the seisin of all, even of the corporation. 7. *Mass.* 475. 15. *Mass.* 156. On the death of a proprietor, his heirs and devisees become both tenants in common, and members of the corporation. His grantees acquire the same right by his deed. 2. *Dane's Abr.* 698.

If therefore the rights of tenants in common, after they have incorporated themselves under the statute, remain at common law as before, it results that one may sue another for his portion of the land, in any case of actual *ouster.* *Higby v. Rice* 5. *Mass.* 344. *Knox v. Jenks* 7. *Mass.* 488. And the demandant has no other remedy ; for it does not appear that the Ten Proprietors have acted as a corporation within twenty years; and it is to be inferred that they have not, since their title became chiefly vested in Gen. *Knox.* The corporation is therefore extinct, within the meaning of the statute.

As to the release from the proprietors to the Commonwealth, it does not effect the question ; it having been intended only to enable the Commonwealth to make the subsequent grant which is the basis of the demandant's claim.

*Orr* and *R. Williams,* for the tenant, denied the right of one member of a corporation of this sort to sustain a real action against a stranger. The lands are held by the corporation, which possesses all the rights of the several members, except the right to have partition at their pleasure. And as the corporation is proved to have existed, and does not appear to have made final partition of its lands more than ten years since, it must be supposed still to exist, and therefore should have brought this action.

But if the corporation is extinct, then its members are tenants in common ; and the present tenant is one of them, by his deed from *Knox.* Upon this ground the demandant cannot recover, there being no evidence of actual *ouster. Doe v. Prosser Cowp.* 217.

But the Ten Proprietors had no title to the lands in question. The whole of *Beauchamp* and *Leverett's* patent was divided ; part of it called the *Waldo* patent ; part assigned to the Twenty Associates ; and part to the Ten Proprietors. The loss which happened by interfering with the *Plymouth* patent, fell upon the part assigned to the others. The Ten Proprietors would have borne none of it, as their land did not extend beyond nine miles and a half from *Penobscot* river ; and hence they were not entitled to any part of the lands granted to make up this loss. Nor have they lost any of their just rights on the northern side. Their claim is wholly under *Beau-*

*champ* and *Leverett*, the line of whose patent came up no farther than the north line of *Frankfort* ; falling short of every part of the land now demanded. Besides, these proprietors took another and satisfactory indemnity for all they might lose, in the bond of Brigadier *Waldo*, to which alone they elected to resort, relying on his personal responsibility.

If they have any just claim, it can only be enforced in a court of chancery ; for at law, the conveyance from the Commonwealth was to *Knox* alone he being the only grantee named in the deed. Courts of law do not recognize grantees by description.

*Williamson*, in reply, said that a grant to heirs *eo nomine*, was good at law ; 12. *Mass.* 447 ; and by parity of reason, the present demandant might take as one of the " persons interested," mentioned in the deed from the Commonwealth. The bond too, from *Waldo* to the Ten Proprietors, was conditioned not for the payment of money, but to " make good all lands" they might lose by the survey ; which can be satisfied only by admitting them to be interested, *pro rata*, in the grant to him.

This case having been argued last year, and continued for advisement, the opinion of the Court was delivered in this term, by

MELLEN C. J. The premises demanded are what the demandant claims as his share in common, as one of the members or proprietors in a corporation called " the Ten Proprietors," which has long existed, and still continues to exist, under that title. No objections are made to the derivation of what the demandant considers as his right or property ; though some have been urged as to the proportion claimed ; but this needs not to be examined, as our decision has no connection with that point.

In the argument two grounds of objection are relied upon, against the demandant's right to maintain this action ;—first, that the land, of which an undivided proportion is claimed as the demandant's property, never belonged to the Ten Proprietors ;—and secondly, that if it did, and does now, no action can be brought to recover it, except in the name of the Ten Proprietors ; and that no individual proprietor can

22

Chamberlain *v.* Bussey.

maintain an action for his proportion, declaring on his own individual seisin. As to the first point, it appears on a careful examination of the reported facts, that no part of the land which had been assigned to the Ten Proprietors was lost, or taken away, in consequence of the interference with the *Plymouth* patent; and of course the land, which was granted to make up the deficiency, was granted to *Henry Knox* and others, interested in the *Waldo* patent; but the Ten Proprietors were not interested; and therefore no part of the tract granted could enure to their use. Besides, there is a total uncertainty as to every person, as grantee, excepting *Henry Knox.* And in addition to all these facts, it appears that the Ten Proprietors took a bond of indemnity from Brigadier *Waldo*, to secure them against all eventual loss, by reason of surveying the patent, according to the directions of the General Court. So that the fact is, they guarded themselves from any anticipated loss, by the personal security of *Waldo ;* and that at last it was ascertained that the anticipated loss or damage was never in fact sustained. The decision of this point settles the cause; but we are disposed to express our opinion on the second also, as it has been the subject of investigation and argument.

By the operation of the provincial statutes, in force when the Ten Proprietors were incorporated, by virtue of a warrant issued on the application of a certain number of those proprietors, the seisin which the individuals had of their respective shares in common, became transferred to the proprietary; and thereupon the Proprietors could sue writs of entry, declaring on their own seisin as such, without giving the names of the members composing the corporation. The seisin being in the company, they could, at a legal meeting, manage and even dispose of any part of the property, by a major vote in interest of the Proprietors. The statute of this State, on this subject, contains nearly the same provisions as the provincial statutes. So long as a man remains a member or proprietor, his common interest is subject to that control which the law has given to a majority in interest. But he may withdraw from the company, and by process of partition have his share assigned to him to hold in severalty; though such a partition would not be granted, until all liens legally created and existing on the property by him owned, had been re-

moved. It was settled in *Mitchell v. Starbuck & al.* 10. *Mass.* 5. that such process of partition would lie by one proprietor, against the corporation or proprietary of which he was one. But as against all others, the rights of the proprietors are to be asserted and enforced by action, in the name of the proprietors or company, by which they are called and known on their own records; and their individual rights are suspended as to remedy by legal process. Such has been the long received and long established doctrine on this subject, and it is not now to be disturbed; and as the fact disproves the seisin alleged, the objection is good on the general issue. On both grounds we are of opinion that the verdict is right, and of course there must be *Judgment for the tenant.*